UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARREN J. CZECHOWSKI,

                Plaintiff,

v.                                                   1:17-CV-0282
                                                  (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER<br>  Counsel for Plaintiff<br>600 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | OONA MARIE PETERSON,<br>ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

On June 11, 2018, the parties consented, in accordance with a Standing Order to proceed before the undersigned. (Dkt. No. 19). The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1959. (T. 93.) He received a GED. (T. 186.) Generally, Plaintiff's alleged disability consists of emphysema, seizure disorder, depression, liver damage, sciatica, and numbness in his hands and feet. (T. 93.) His alleged disability onset date is January 4, 2014. (T. 177.)[1] His date last insured is December 31, 2018. (T. 20.) He previously worked as a machine operator. (T. 187.)

### B. Procedural History

On January 26, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 104.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 28, 2016, Plaintiff appeared before the ALJ, David J. Begley. (T. 64-92.) On August 26, 2016, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 15-31.) On January 31, 2017 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 20-27.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2018 and Plaintiff had not engaged in substantial gainful activity since January 4, 2014. (T. 20.) Second, the ALJ found Plaintiff had the severe impairments of seizure disorder and depression. (*Id.*) The ALJ determined

---

[1] Plaintiff amended his original alleged onset date from August 30, 2013 to January 4, 2014. (T. 93, 177.)

Plaintiff's chronic obstructive pulmonary disease ("COPD"), alcohol abuse/alcohol induced cirrhosis, sciatica, and memory issues were non-severe impairments. (T. 21.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> work at all exertional levels but with the following nonexertional limitations: except [Plaintiff] should avoid ladders, ropes and scaffolds. [Plaintiff] should further avoid unprotected heights and open flames. [Plaintiff] is limited to simple, routine and repetitive tasks in a workplace free of fast pace production requirements, involving only simple, work-related decisions; with few, if any, work place changes.

(T. 23-24.) Fifth, the ALJ determined that Plaintiff was capable of performing his past relevant work. (T. 26.)

## II.     THE PARTIES' BRIEFINGS

### A.     Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC finding was not supported by substantial evidence. (Dkt. No. 12 at 13-17.) Second, Plaintiff argues the ALJ erred in failing to find Plaintiff's COPD, sciatica, and peripheral edema were not severe impairments at step two, and this error was not harmless because it infected the balance of the ALJ's analysis. (*Id.* at 18-19.) Third, and lastly, Plaintiff argues the ALJ failed to consider Plaintiff's testimony, including his subjective complaints of pain, and failed to make an adequate credibility finding. (*Id.* at 19-22.)

### B.     Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly determined Plaintiff's alleged COPD, sciatica, and peripheral edema were not severe. (Dkt. No. 17 at 18-21.) Second, Defendant argues the ALJ properly assessed and determined that substantial record evidence contradicted Plaintiff's subjective complaints. (*Id.* at 21-25.) Third, and lastly, Defendant argues the ALJ properly weighed the medical opinions of the record. (*Id.* at 25-28.)

### C. Plaintiff's Reply

Plaintiff filed a reply to Defendant's memorandum. (Dkt. No. 18.) In general, Plaintiff asserts Defendant fails to meaningfully address the arguments and Defendant's arguments consist of mostly *post hoc* rationalizations for the ALJ's determinations. (*Id.*)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**D. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c)[2]. A plaintiff has the burden of establishing he has a severe impairment. *Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014) (*citing* 20 C.F.R. § 404.1512(a)). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v.*

---

[2] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

*Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

Failure to identify an impairment as severe may be harmless error where the ALJ found other severe impairments, proceeded with the subsequent steps, and in those subsequent steps specifically considered all of a plaintiff's impairments. *Reices-Colon v. Atsrue*, 523 F. App'x 796 (2d Cir. 2013).

Plaintiff argues the ALJ erred in finding Plaintiff's COPD, sciatica, and peripheral edema were not severe impairments. (Dkt. No. 12 at 18-19.) Here, the ALJ's step two determination was proper and supported by substantial evidence. In the alternative, any error in determining Plaintiff's COPD, sciatica, and peripheral edema were not severe was harmless. Further, the ALJ properly considered Plaintiff's peripheral edema as a symptom of Plaintiff's cirrhosis, which the ALJ determined was not a severe impairment.

Although Plaintiff was diagnosed with COPD, the ALJ determined his symptoms included only "wheezing at night and [did] not include dyspnea, dyspnea at rest, dyspnea on exertion, productive cough, clear sputum production, colored sputum production, increased sputum production or change in sputum quality." (T. 21, 487.) Plaintiff asserts the ALJ erred in his determination because the ALJ mischaracterized the opinion of consultative examiner, Michael Rosenberg, M.D., regarding limitations stemming from COPD. (Dkt. No. 12 at 18-19.)

First, any error to determine Plaintiff's COPD was not severe was harmless because the ALJ specifically considered Plaintiff's COPD, and any work related functional limitations, his step four analysis. (T. 21.) Second, for the reasons further

7

stated herein, the ALJ did not mischaracterize Dr. Rosenberg's opinion regarding limitations related to Plaintiff's COPD.

The ALJ found Plaintiff's cirrhosis, and related symptoms such as edema, was not severe because Plaintiff had been "symptom free and feeling well" since he was sober. (T. 21, 481.) In support of his argument, that the ALJ failed to find edema a severe impairment, Plaintiff cites to evidence in the record; however, the citations provided by Plaintiff do not reference edema nor do they provide any functional limitations associated with edema. (Dkt. No. 12 at 18.)[3] Therefore, Plaintiff has failed to meet his burden at this step. Further, any error in finding Plaintiff's cirrhosis non severe was harmless because at step four the ALJ relied Dr. Rosenberg's medical examination. (T. 22.) On examination, Dr. Rosenberg observed no edema in Plaintiff's extremities. (T. 301.) Overall, the ALJ properly concluded Plaintiff's cirrhosis, and symptoms, were not severe; further, Plaintiff failed to meet his burden at step two because he failed to provide objective evidence in the record to support his contention that his edema caused any physical functional limitations.

The ALJ also properly determined Plaintiff's sciatica was not a severe impairment at step two. (T. 21.) Plaintiff asserts the ALJ "failed to even acknowledge the numerous instances in which Plaintiff visited his primary care provider complaining primarily of back pain." (Dkt. No. 19 at 19.) However, in making his determination, the ALJ noted Plaintiff reported back pain to his primary care providers. (T. 21.) The ALJ determined that overall Plaintiff's back pain was intermittent and although the record contained

---

[3] Plaintiff provides citation to evidence in the record pertaining to complaints of "joint pain" not edema. (Dkt. No. 12 at 18, citing T. 345, 399, 402, 414, 417, 423-426, 429, 441, 451, 454, 456, 459, 461, 489, 499-500, 520.) Plaintiff does not allege the ALJ erred in his evaluation of Plaintiff's alleged "joint pain."

8

complaints of back pain, numerous records also indicated no complaints of back pain. (*Id.*) Therefore, contrary to Plaintiff's assertion, the ALJ did acknowledge Plaintiff's complaints to primary care providers. Although the ALJ did not specifically mention these findings again in his step four analysis, it is clear from the overall written decision that the ALJ considered the evidence in the record pertaining to Plaintiff's sciatica and substantial evidence supported the ALJ's step two determination that the impairment was not severe.

Here, the ALJ's step two determination was proper and supported by substantial evidence. Further, any error at step two would be harmless because the ALJ proceeded with the sequential process and either specifically discussed the non-severe impairments at step four, or relied on medical opinion evidence at step four which took all of Plaintiff's alleged impairments into consideration in providing an opinion regarding Plaintiff's functional abilities.

### B. The ALJ's RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

The relevant factors considered in determining what weight to afford an opinion provided by a medical source include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the

opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

### i.) Consultative Examiner, Michael Rosenberg, M.D.

On April 15, 2014, Dr. Rosenberg examined Plaintiff and provided a medical source statement. (T. 298-302.) Dr. Rosenberg noted Plaintiff had a history of seizure disorder, depression, hypertension, emphysema, low back pain, and cirrhosis. (T. 298-299.)

On exam, Dr. Rosenberg observed Plaintiff was not short of breath, had a normal gait, could walk on heels, could not walk on toes, could "squat 75% of full," his stance was normal, he did not use an assistive device, he needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 300.)

Dr. Rosenberg noted on exam Plaintiff's chest and lungs were clear to auscultation with no significant chest wall abnormality. (T. 300.) A musculoskeletal exam revealed full range of motion in Plaintiff's cervical and lumbar spine. (*Id.*) Plaintiff had full range of motion in his upper and lower extremities. (T. 301.) Plaintiff's joints were stable and nontender with no redness, heat, swelling or effusion. (*Id.*) Plaintiff had full strength in all extremities with no clubbing or edema; however, Dr. Rosenberg noted cyanosis in both feet. (*Id.*) Dr. Rosenberg performed a pulmonary function test, the results of which were "consistent with mild obstructive disease, not improved with bronchodilators." (*Id.*)

In a medical source statement, Dr. Rosenberg opined Plaintiff:

should avoid activities that entail bright lights and should avoid heights and other activities, such as operating heavy machinery, or any activities that

may injure [Plaintiff] or others.  He should not drive secondary to his history of a seizure disorder.  [Plaintiff] has mild restrictions for activities requiring mild or greater exertion because of his COPD.

(T. 301-302.)  There are no other medical source statements in the record pertaining to Plaintiff's physical functional limitations.

In his evaluation of the medical opinion evidence in the record, and subsequent RFC determination, the ALJ afforded Dr. Rosenberg's opinion "significant weight."  (T. 25.)  The ALJ reasoned the doctor's opinion was "reasonable" and "consistent with both his objective findings and the overall record at the time of the examination."  (*Id.*)  The ALJ further stated he did not afford Dr. Rosenberg's opinion "great weight" because the doctor did not have the opportunity to examine Plaintiff after his seizure medication changes.  (*Id.*)  The ALJ noted he nonetheless considered Dr. Rosenberg's "safety restrictions."  (*Id.*)  Plaintiff asserts the ALJ erred in his evaluation of Dr. Rosenberg's opinion on two grounds.

First, Plaintiff argues the ALJ failed to incorporate Dr. Rosenberg's opinion that Plaintiff should avoid bright lights, heavy machinery, and driving in the RFC; and further, the ALJ failed to provide reasoning for not incorporating these limitations.  (Dkt. No. 19 at 13-14.)  To be sure, although the ALJ stated in his written decision he adopted Dr. Rosenberg's "safety restrictions," the RFC did not explicitly include a limitation to bright lights, heavy machinery, or driving.  (T. 23-24.)  The RFC stated Plaintiff should avoid ladders, ropes, scaffold, unprotected heights, and open flames.  (*Id.*)

Here, the ALJ properly assessed Dr. Rosenberg's opinion and although the ALJ did not include all of the doctor's nonexertional limitations in his RFC, he either provided good reason for not doing so or the error was harmless.  An ALJ does not have to

11

strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

After a review of the record, it is apparent the ALJ inadvertently omitted a limitation to avoid hazardous machinery from his written RFC. At the hearing, the ALJ posed the following hypothetical RFC to the vocational expert ("VE"):

> assume a person of [Plaintiff's] age, education and work experience, no exertional limitations, need to avoid climbing ladders, ropes or scaffolding, need to avoid hazardous machinery, unprotected heights and open flames, would be limited to doing simple, routine, repetitive tasks, free of fast paced production requirements, involving only simple, work-related decisions free of any workplace changes.

(T. 89.) Based on the hypothetical, the VE testified such a person could perform his past relevant work as a machine operator in packaging, DOT code 920.685-078. (T. 88-89.) Therefore, the ALJ's failure to include in his written RFC a limitation to avoid hazardous machinery would be harmless because such limitation was specifically included in the hypothetical presented to the VE at the hearing. The VE testified that Plaintiff could perform his past relevant work despite a limitation to avoid hazardous machinery.

Plaintiff asserts the ALJ erred in failing to provide any explanation for not adopting Dr. Rosenberg's nonexertional limitations. (Dkt. No. 12 at 14.) However, the ALJ stated he "considered" the limitations even though the limitations were provided before Plaintiff's medication changes. (T. 25.) Plaintiff reported to Dr. Rosenberg, in April 2014, that he experienced "three to four seizures a day." (T.

12

298.) Plaintiff's subsequent reports to his treating providers indicated his seizures ceased with medication. In October of 2014, a treating provider with Dent Neurologic Institute noted Plaintiff had a driving restriction as long as seizure episodes continued. (T. 359.) However, notations from treating providers at Dent dated January 14, 2015, stated Plaintiff switched seizure medications and had "no further seizure or seizure-like episodes" since November of 2014. (T. 351.) In May of 2015, and again in October of 2015, Plaintiff denied any seizure activity and notations indicated an EEG in October of 2014 was normal. (T. 341, 344.) The ALJ's decision to not include specific limitations to driving and avoidance of bright lights was supported by substantial evidence in the record. The ALJ noted Dr. Rosenberg's limitations were based on Plaintiff's reports of three to four seizures a day and provided prior to Plaintiff switching his seizure medication. After the medication change, Plaintiff consistently denied any seizure activity. Therefore, substantial evidence in the record supported the ALJ's determination to not include all of Dr. Rosenberg's nonexertional limitations in the RFC.

Further, any error to include a limitation on driving and bright lights in the RFC was harmless because the occupation of "machine operator, packaging" does not require driving or exposure to bright lights. According to the description in the Dictionary of Occupational Titles ("DOT") the occupation of "packer, machine" does not require hazardous environmental conditions. DOT 920.685-078. Specifically, the following conditions are "not present": exposure to weather, extreme cold/heat, wet and/or humid, vibration, atmospheric condition, moving mechanical parts,

electric shock, high exposed places, radiation, explosives, toxic caustic chemicals, and "other environmental conditions." *Id.*

Second, Plaintiff asserts the ALJ incorrectly characterized Dr. Rosenberg's opinion regarding Plaintiff's ability to perform exertional activities. (Dkt. No. 19 at 14.) Dr. Rosenberg opined Plaintiff had "mild restriction for activities requiring mild or greater exertion because of his COPD." (T. 302.) In his decision, the ALJ stated Dr. Rosenberg opined Plaintiff's "COPD causes [Plaintiff] mild limitations in activities of daily living." (T. 25.) To be sure, Dr. Rosenberg essentially opined Plaintiff had mild limitations in his ability to perform exertional activities due to his COPD and the ALJ misstated that conclusion. (T. 302.) Plaintiff asserts this error was harmful because "even a mild restriction in activities requiring mild or greater exertion would obviously influence a determination that Plaintiff could perform work at all exertional levels." (Dkt. No. 12 at 15.)

To be sure, where an ALJ relies on a misstatement in formulating his RFC, the RFC may be legally erroneous and not supported by substantial evidence. For example, this Court has held that an ALJ committed remandable error where he stated he relied on the opinion of a consultative examiner finding plaintiff could maintain a regular schedule in formulating his RFC, where in fact the doctor stated plaintiff could not maintain a regular schedule. *Dejohn v. Colvin*, No. 6:14-CV-06414, 2015 WL 4662817, at *2 (W.D.N.Y. Aug. 6, 2015). Here, the ALJ's error was not so grave as to render his RFC faulty.

The ALJ essentially held, consistent with Dr. Rosenberg's opinion, that Plaintiff's COPD imposed no more than mild limitations. As stated by the ALJ in his step two

determination, Plaintiff's COPD symptoms included wheezing at night with no dyspnea, dyspnea at rest, dyspnea on exertion, production couch, or sputum production. (T. 21.) Indeed, Plaintiff's medical providers routinely observed his respiration was normal. (T. 329, 364-366, 376, 384-386, 393, 396-397, 403-404, 417-418, 438, 445, 456, 462, 470, 485, 489, 501, 513, 520.) Notations dated January 24, 2014, stated Plaintiff's COPD did not prevent him from doing activities of daily living. (T. 388-389.) Plaintiff fails to provide any evidence in the record indicating Plaintiff had greater restrictions due to his COPD than imposed by the ALJ in his RFC. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (plaintiff bears the burden at steps one through four). Further, although the ALJ determined Plaintiff could perform work at all exertional levels, Plaintiff's past relevant work is classified as medium. Therefore, although the ALJ misstated Dr. Rosenbergs opinion regarding mild restrictions due to Plaintiff's COPD, any error was harmless because the ALJ properly evaluated Plaintiff's COPD at all steps of the sequential process, Plaintiff failed to meet his burden establishing he had greater restrictions due to his COPD, and substantial evidence in the record supported the ALJ's determination regarding limitations due to his COPD.

Overall, the ALJ did not err in his assessment of Dr. Rosenberg's opinion. The ALJ did not fail to explain why he did not include certain nonexertional limitations in his RFC. It was apparent from the ALJ's decision he did not include additional limitations due to Plaintiff's seizures because medical evidence provided after Dr. Rosenberg's opinion indicated Plaintiff's seizure activity was well controlled on a new medication. Further any error to include a limitation to avoid machinery in the written RFC was harmless because the limitation was included in the hypothetical presented to the VE at

the hearing. The ALJ further properly evaluated any limitations associated with Plaintiff's COPD and although the ALJ misstated Dr. Rosenberg's opinion the error was not so grave as to render the RFC faulty.

### ii.) Consultative examiner, Kristina Luna, Psy.D.

On April 24, 2014, Dr. Luna performed a psychiatric evaluation and provided a medical source statement. (T. 310-313.) On examination, Dr. Luna observed Plaintiff was cooperative with an adequate manner of relating and overall social skills. (T. 311.) She noted Plaintiff's thought process was coherent and goal directed, his affect was depressed, his mood was "reported as apathetic," his attention and concentration were intact, his recent and remote memory was intact, his cognitive functioning was not formally assessed but appeared to be average, and his insight and judgment were good. (T. 311-312.)

In a medical source statement Dr. Luna opined:

> [Plaintiff] has no limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions. He is moderately limited in his ability to relate adequately with others and appropriately deal with stress. Difficulties are caused by distractibility.

(T. 313.)

The ALJ afforded Dr. Luna's opinion "great weight." (T. 25.) The ALJ reasoned her opinion was based on a clinical interview with Plaintiff, a review of Plaintiff's medical and social history, testing, and general observations. (*Id.*) He stated her opinion was reasonable, and consistent with treatment notes and statements made by Plaintiff in the record. (*Id.*)

16

Plaintiff asserts the ALJ erred in his evaluation of Dr. Luna's opinion because he "ignored" her conclusion that Plaintiff was moderately limited in his ability to relate adequately with others and appropriately deal with stress. (Dkt. No. 12 at 16.) For the reasons stated herein, Plaintiff's argument fails.

Here, the ALJ's mental RFC determination appropriately accounted for Plaintiff's mental limitations by limiting Plaintiff to simple, routine and repetitive tasks in a workplace free of fast pace production requirements and only simple work related decisions and few work place changes. (T. 23-24.)

A finding of moderate limitations in social functioning and ability to deal with stress does not preclude the ability to perform unskilled work. The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with

others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").

The ALJ's mental RFC was supported by substantial evidence in the record, namely, Dr. Luna's medical opinion. Moderate limitations in mental functions do not preclude the ability to perform the basic mental demands of work and the ALJ's RFC, as outlined above, took into account Plaintiff's limitations. Therefore, the ALJ's mental RFC determination properly accounted for any limitations Plaintiff may have in social interactions and dealing with stress.

### C. The ALJ's Credibility Determination

In determining whether a plaintiff is disabled, the ALJ must also make a determination as to the credibility of the plaintiff's allegations. " 'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.' " *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that " '[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,' " and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.' " *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d

588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, the limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 24.)

Plaintiff asserts the ALJ erred in his credibility analysis because he "entirely failed to even summarize Plaintiff's testimony," the ALJ cherry picked the evidence in his step three discussion of Plaintiff's mental impairments, and the ALJ failed to consider Plaintiff's strong work history.  (Dkt. No. 12 at 19-22.)

Contrary to Plaintiff's assertion, the ALJ summarized Plaintiff's testimony. Although the ALJ did not provide a lengthy review of Plaintiff's testimony, it is apparent from the record that the ALJ did not "ignore" his testimony.  At steps two and three the ALJ cited hearing testimony regarding Plaintiff's cirrhosis (T. 21) and the ALJ outlined written testimony provided by Plaintiff regarding his mental abilities (T. 22-23).  In his step four analysis, the ALJ cited Plaintiff's hearing testimony regarding his alleged disability and seizure disorder.  (T. 24.)  The ALJ noted Plaintiff's testimony regarding mental health symptoms.  (T. 25.)  Therefore, contrary to Plaintiff's assertion, the ALJ did not ignore Plaintiff's testimony.

Here, the ALJ did not specifically mention Plaintiff's work history.  However, failure to reference a plaintiff's work history does not undermined his credibility

assessment. *See Wavercak v. Astrue,* 420 F. App'x. 91, 94 (2d Cir. 2011) ("That Wavercak's good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."). Good work history is "just one of many factors" appropriately considered in assessing credibility. *See Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (citing *Schaal,* 134 F.3d at 502)). The ALJ relied on other factors, such as the inconsistency between Plaintiff's testimony and the medical evidence, in making a credibility determination. The ALJ also considered Plaintiff's treatment, including medication, in making his credibility determination. (T. 24-25.) Overall, the ALJ's credibility assessment was proper and supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 30, 2018

_Bill Carter_
William B. Mitchell Carter
U.S. Magistrate Judge